UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNIE LEE JORDAN, JR.,
    Plaintiff,

vs.                                                     Case No.: 3:22cv5101/MCR/ZCB

BRITTNEY SEXTON, et al.,
    Defendants.
_____/

# **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Johnnie Lee Jordan is a Florida Department of Corrections (FDOC) inmate. Defendants are four FDOC officers. Plaintiff claims that Defendants retaliated against him, in violation of the First Amendment, by fabricating a disciplinary charge after he made Defendant Sexton the subject of a legal filing in a different civil rights case. (Doc. 35). Defendants have moved for summary judgment, which Plaintiff has opposed. (Docs. 85, 179, 180, 182). For the reasons below, Defendants' motion for summary judgment should be granted.

1

## I.  Summary of Material Facts[1]

Plaintiff was housed at Okaloosa Correctional Institution when the events underlying this lawsuit occurred. (Doc. 35). On April 14, 2021, he filed a "Motion for Action for Breach of Contract" in a different civil rights case (Case No. 4:18cv149/RH/MAF) alleging that the attorney defending the FDOC officers in that case (none of whom are the Defendants in this case) colluded with Defendant Sexton to deprive Plaintiff of settlement funds. (Doc. 35 at 5; Doc. 86, Pl.'s Dep. 8:21-25).

On the morning of April 29, 2021, Plaintiff left his dormitory and went to "center court" for security officers to verify that he was on the law library "call out" list. (Doc. 35 at 6; Doc. 86, Pl.'s Dep. 22:9-13, 23:14-16). After spending a couple of hours in the law library, Plaintiff left to send

---

[1] The facts discussed are drawn from Plaintiff's Second Amended Complaint (Doc. 35) and the evidence in the summary judgment record that may be considered at this stage. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (holding that only sworn statements or statements qualifying under 28 U.S.C. § 1746 may be considered at the summary judgment stage). Where the parties offer conflicting accounts, the Court has "set forth the facts, drawn from the evidence presented, in the light most favorable to" the nonmoving party. *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for summary judgment purposes may, therefore, not ultimately be the true facts. *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

outgoing mail. (Doc. 35 at 6-7; Doc. 180 at 2; Doc. 86, Pl.'s Dep. 24:9-11, 25:10-15). Plaintiff completed his mailing, walked back to the law library, and waited at the door for the law librarian to let him back in. (Doc. 35 at 7; Doc. 180 at 2; Doc. 86, Pl.'s Dep. 26:18–27:1).

Before being permitted back in the library, Defendant Kerpsack called Plaintiff over to "center court" and asked why he was standing at the law library door. (Doc. 35 at 7; Doc. 180 at 2-3). Plaintiff told Defendant Kerpsack that he had been in the law library because he had a deadline, and that he was waiting to go back inside. (Doc. 35 at 7; Doc. 180 at 3). Defendant Kerpsack looked at the call-out list before ordering Plaintiff to return to his dormitory. (*Id.*). Plaintiff asked if he could retrieve his documents from the law library, but Defendant Kerpsack said no.[2] (*Id.*). Plaintiff walked towards the law library on his way to the dormitory. (Doc. 180 at 3). The law librarian opened the door for Plaintiff to re-enter, but Plaintiff told the librarian that Defendant Kerpsack had told him not to re-enter. (*Id.*).

---

[2] Plaintiff subsequently received his documents from the law library staff. (Pl.'s Dep. 28 1-6).

3

Defendant Taylor then walked up and ordered Plaintiff to return to his dormitory. (Doc. 35 at 7-8; Doc. 180 at 3). Defendant Taylor said, "Go back to C-dorm, dumbass and file grievances and lawsuits, because you ain't going back into that library." (Doc. 35 at 8; Doc. 180 at 3). Defendant Taylor then told Plaintiff to turn around and "cuff up" because he was going to confinement. (*Id.*). Defendant Taylor handcuffed Plaintiff and escorted him to the medical department for a pre-confinement examination. (Doc. 35 at 8). During the escort, Defendant Taylor said, "Nothing you file will go out." (*Id.*).

Upon arriving at the medical department, Defendant Allen came from behind a door where Defendant Sexton's office was located. (Doc. 35 at 8; Doc. 180 at 3). Plaintiff tried to tell Defendant Allen his side of the story, but Defendant Allen refused to listen. (*Id.*). Defendant Allen asked Plaintiff if he filed "that shit" about Defendant Sexton with the court. (Doc. 35 at 8; Doc. 86, Pl.'s Dep. 14:8-18; Doc. 180 at 3). Plaintiff asked Defendant Allen what she meant, and Defendant Allen responded, "You know what I mean." (Doc. 86, Pl.'s Dep. 15:19).

During the pre-confinement medical exam, Plaintiff argued with Defendants Taylor and Allen about his placement in confinement. (Doc.

4

35 at 9; Doc. 86, Pl.'s Dep. 14:20–16:15). Plaintiff told Defendants Taylor and Allen that he would file grievances about their placing him in confinement, and Plaintiff told Defendant Taylor that he could lose his job. (*Id.*). Defendants Taylor, Allen, and the nurse made derogatory comments and jokes. (*Id.*). Plaintiff responded with more threats of filing grievances and a lawsuit. (Doc. 35 at 9-10; Doc. 86, Pl.'s Dep. 14:20–16:15). Defendant Allen told Plaintiff that "this is what you get" for complaining to the court about Officer Sexton. (Doc. 35 at 10).

Defendants Allen and Taylor took Plaintiff to administrative confinement. (*Id.*). Later that day, Defendant Taylor charged Plaintiff with a disciplinary infraction for disobeying an order. (Doc. 35 at 10-11; Doc. 86 at 33). Defendant Allen reviewed and approved the disciplinary charge. (Doc. 86 at 33). Officer O'Neal (not a Defendant in this case) investigated the disciplinary charge. (Doc. 136 at 3). Defendant Kerpsack was identified as a witness. (*Id.*). Plaintiff received notice of the disciplinary charge on May 3, 2021. (Doc. 180-1 at 35-36; Doc. 136 at 3).

A disciplinary hearing was held on May 6, 2021. (Doc. 136). Plaintiff attended the hearing and denied his guilt. (Doc. 136 at 3, 5; doc.

86, Pl.'s Dep. 17:1-3). Plaintiff verbally acknowledged that he understood the charge, the plea process, and possible penalties. (Doc. 136 at 5). The disciplinary panel (two prison officials who are not Defendants) read and considered Defendant Taylor's statement of the facts, Plaintiff's statement, all witness statements, and other evidence. (*Id.*).

This was the disciplinary panel's decision:

> Based in part on 1) the reporting officer's statement as well as 2) the completed investigation, 3) witness statements, and 4) based upon review of the identified tape or the capability of the particular taping equipment, the tape requested does not provide evidence to support the inmate's statement. On 4/29/21, CO Carson Taylor was assigned as inside grounds officer. At approx. 9:00AM, he was present at center court monitoring I/M [inmate] movement & callouts. He questioned I/M Jordan as to why he was at center court at which time he told him he had a legal deadline. He advised I/M Jordan that a call had not been made for legal mail & he needed to report back to his assigned dorm. I/M Jordan refused his order & stated to him that he had a legal deadline. CO Taylor gave I/M Jordan a second verbal order to return to his dorm at which time I/M Jordan refused.

(*Id.* at 3-5). Based on these findings, the panel found Plaintiff guilty of disobeying an order as charged. (*Id.*). Plaintiff now claims that the disciplinary report was fabricated as a retaliatory act against him. (Doc. 35 at 10-11; Doc. 180 at 4, 8).

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When answering that question, courts view the evidence in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 380 (2007). And the "non-moving party . . . bears the burden of coming forward with sufficient evidence on each element that must be proved." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990).

## III. Discussion

Plaintiff claims that Defendants violated the First Amendment by initiating a false disciplinary proceeding against him in retaliation for his filing of a legal document in another case involving Defendant Sexton. Defendants have moved for summary judgment, making three arguments: (1) Plaintiff's retaliation claims are predicated on pure speculation with no evidentiary support; (2) Plaintiff's conviction on the disciplinary charge of disobeying an order precludes his claim that the charge was retaliatory; and (3) Defendants are entitled to qualified immunity. (Doc. 85 at 5-12). Because the second argument clearly carries the day and warrants summary judgment for Defendants, the Court will limit its discussion to that argument.

To establish a First Amendment retaliation claim, a prisoner must show that "he engaged in protected speech, that officials retaliated against him, an adverse effect on his protected speech, and a causal relationship between the retaliation and the adverse effect." *Smart v. England*, 93 F.4th 1283, 1289 (11th Cir. 2024). A prisoner may state a claim under the First Amendment when he alleges that he was punished for filing a grievance or lawsuit concerning the conditions of his

8

imprisonment. *Id.* The Eleventh Circuit has held, however, that a prisoner's violation of a prison regulation is unprotected by the First Amendment. *Id.* Thus, a "prisoner cannot prove a claim of retaliation based on a prison disciplinary charge when the inmate was found guilty of the actual behavior underlying that charge." *Id.* at 1290 (cleaned up). If the prison hearing tribunal finds a prisoner guilty of the disciplinary violation, the tribunal's finding "is dispositive, so long as the prisoner was afforded due process and some evidence in the record supports the finding of guilt." *Id.* (cleaned up); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) (holding that "an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process").

In the context of prison disciplinary proceedings, due process "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* (cleaned up). Instead, three things are required: (1) written notice of the claimed violation, (2) the opportunity to present witnesses and evidence unless doing so would be unduly hazardous to prison safety or correctional goals,

9

and (3) a written statement of the disciplinary panel's factual findings. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

Here, Plaintiff's First Amendment retaliation claim is based on an allegation that Defendants pursued disciplinary action against Plaintiff in retaliation for Plaintiff making a legal filing about Defendant Sexton. The evidence in the record shows that Plaintiff had a disciplinary hearing and was found guilty of the conduct (i.e., disobeying an order) underlying the disciplinary charge. (Doc. 136 at 4-5). Under the Eleventh Circuit precedent discussed above, that finding precludes Plaintiff from prevailing on his retaliation claim unless he was denied due process or the finding of guilt was not supported by some evidence.

Looking to the due process requirements above, the record reflects that Plaintiff received written notice of the alleged disciplinary violation. (Doc. 180-1 at 35-36). Additionally, the record reflects that the disciplinary panel issued a written decision explaining why Plaintiff was found guilty of the violation. (Doc. 136 at 3-5). Plaintiff claims, however, that he was not allowed to call witnesses at the hearing. (Doc. 180 at 18). He also alleges he requested video footage from the fixed wing camera(s)

to corroborate his version of events, but it was not presented to the disciplinary panel. (Doc. 35 at 13-14; Doc. 180 at 18).

Plaintiff's arguments are unavailing. Plaintiff received notice of the disciplinary charge on May 3, 2021. (Doc. 180-1 at 35; Doc. 136 at 3).[3] That notice advised Plaintiff that he must inform the investigating officer of any witnesses. (Doc. 180-1 at 35). It further advised Plaintiff that witness testimony would be presented at the hearing via written statements, and that he should consult Fla. Admin. Code Ann. r. 33-601.307(3) for complete information regarding witnesses. (*Id.*). That rule notifies inmates that inmate witnesses will not routinely be called to present live testimony at disciplinary hearings. Fla. Admin. Code Ann. r. 33-601.307(3)(a)-(b). The rule also instructs inmates on how they may request live witness testimony and how such requests are evaluated. *Id.*, r. 33-601.307(3)(c), (e)-(i). The rule clearly notifies inmates that they waive their right to call witnesses (either live or by written statement) if they fail to complete and sign the Witness Disposition Form (Form DC6-112B). *Id.*, rr. 33-601.305(2(f), 33-601.307(3)(d). Plaintiff has not submitted a copy of a Witness Disposition Form or any other evidence

---

[3] The hearing was held three days later on May 6, 2021. (Doc. 136 at 3).

showing that he identified any witnesses during the investigation. Thus, he has come forward with no evidence to support the assertion that he was prevented from presenting the testimony of witnesses at the hearing.

Similarly unavailing is Plaintiff's argument that he was denied due process because the disciplinary panel failed to review video evidence. The disciplinary panel specifically noted in its decision that the available video evidence did not support Plaintiff's version of events. (Doc. 136 at 3). Thus, there is no merit to Plaintiff's argument that the panel failed to consider the available video evidence.

Having found that the requirements of due process were satisfied by the disciplinary process in this case, the Court will now examine whether the disciplinary panel's finding of guilt was supported by "some evidence." The "some evidence" standard is not high and can be satisfied by "even a meager showing, so long as the record is not so devoid of evidence as to render the tribunal's determination arbitrary." *Smart*, 93 F.4th at 1290. That low standard was met in this case. The disciplinary charge alleged that Plaintiff failed to follow an order. The statement of Defendant Taylor and statements of other witnesses as to what happened on April 29, 2021, were sufficient to satisfy the "some evidence" standard.

Because a prison disciplinary panel found that Plaintiff committed the disciplinary violation of "disobeying verbal or written order" after a hearing that complied with the requirements of due process, Plaintiff "cannot state a claim of retaliation" against the officers involved. *O'Bryant*, 637 F.3d at 1215. Accordingly, Defendants are entitled to summary judgment. *See Williams v. Radford*, 64 F.4th 1185, 1195 (11th Cir. 2023) (affirming summary judgment on prisoner's retaliation claim where prison disciplinary panel found prisoner guilty of the disciplinary charge on which his retaliation claim was based); *see also Jones v. Schwarz*, No. 3:18cv155, 2021 WL 1201675, at *10 (N.D. Fla. Feb. 16, 2021)*, adopted by* 2021 WL 1196463 (granting summary judgment on prisoner's retaliation claim because the prison disciplinary panel found the plaintiff guilty of the disciplinary violations and, therefore, the plaintiff "cannot assert a claim of retaliation in which he claims that these disciplinary reports are the acts of retaliation").

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (Doc. 85) be **GRANTED**;

2. The Clerk of Court be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this 9th day of August 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.